JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Patrick Rowley, appeals a judgment from the Cuyahoga County Court of Common Pleas finding him guilty of gross sexual imposition. After reviewing the facts and the pertinent law, we affirm.
 {¶ 2} On August 10, 2005, the Cuyahoga County Grand Jury indicted Rowley on two counts of rape, in violation of R.C. 2907.02(A)(2) and R.C. 2907.02(A)(1)(c), and two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1) and R.C. 2907.05(A)(5). He entered a plea of not guilty to the charges. A jury trial commenced on June 28, 2006. The following testimony was offered at trial.
 {¶ 3} The victim testified for the state that on the date of the offense she was 16 years old, date of birth August 8, 1988. She stated that the Rowley family lives *Page 3 
two houses away from her. She said Meghan Rowley ("Rowley's sister") was her best friend and she spent time at the Rowley's house almost every day.[1]
 {¶ 4} On December 18, 2004, the victim went to her friend's house, Brittany Schwartz ("Schwartz"), for a Christmas party. She told her parents she was going to spend the night there. But, she actually intended to sleep at the Days Inn in Strongsville, Ohio, because Rowley planned on renting a hotel room for a party.
 {¶ 5} Rowley, his sister, Ashley Repinski ("Rowley's girlfriend"), Joshua Repinski ("Repinski"), Phil Giampapa ("Giampapa"), and the victim arrived at the hotel at approximately 11:30 p.m. Rowley rented two rooms next to each other, room number 26 ("first room") and room number 25 ("second room"). The victim stated that there were no male relatives of Rowley's at the hotel party. She also said that Rowley and his girlfriend argued that night.
 {¶ 6} The victim testified that she hung out in the first room during the hotel party. She said that Rowley poured her two cups of liquor, approximately an inch full, and she drank them, but she could have drunk more. She stated that she felt dizzy and her nose burned from the smell of liquor. She recalled that the alcohol made her vomit later in the bathroom. *Page 4 
 {¶ 7} She laid in the bed next to the bathroom and fell asleep. She testified that when she went to sleep, she had her clothes on, including her underwear and pants. She said that she did not wear her underwear inside out.
 {¶ 8} The victim stated that the next thing she remembered was waking up with the bed covers over her, her pants and underwear around her ankles, her T-shirt and tank top off, and her bra on. She testified that she did not know how her pants and underwear got around her ankles. She said that she never slept naked and she would not have taken her pants and underwear off herself.
 {¶ 9} She stated that she saw Rowley sleeping beside her, in the same bed. She could not remember if he was under or over the covers. She also saw Giampapa and another male, Ahmet Cunmulaj ("Cunmulaj"), sleeping on the floor, and Repinski sleeping in the other bed.
 {¶ 10} The victim testified that she pulled up her underwear and pants and then went to the bathroom. She urinated and noticed a "streak of blood" on the toilet paper. She also stated that her vagina felt "really sore." She testified that she had not experienced any soreness in her vaginal area prior to that night.
 {¶ 11} The victim stated that she went to the other room to look for Rowley's sister. She felt scared and upset and "[she] believed [Rowley] took advantage of [her]." She testified that she cried and told Rowley's sister, "[Rowley] had raped me." She stated that Rowley's sister came up to her and said, "[he] didn't do anything." *Page 5 
 {¶ 12} She then said that she called her friend for a ride. She testified, "I didn't want to get in trouble for not telling [my parents] where I was really going." She also did not want to tell her parents about what happened to her at the hotel. She said, "I just wanted to keep it to myself."
 {¶ 13} When the victim got home, she went to her bedroom and fell asleep. Her parents woke her up and wanted to know where she had been. She told them what happened at the hotel. She said that her mother attempted to take her to two hospitals but they did not have enough staff to help her, because of a snow storm. The victim and her mother then met her father at the Rowley's house to talk with them. Next, her mother took her to Southwest General Hospital where a nurse conducted a rape kit on her.
 {¶ 14} The victim testified that about three months after the incident, she received an instant message from Rowley that said, "ha ha ha, me and the detective were laughing at you." She stated that she never gave anyone consent to sexually touch her or have sexual activity with her on August 18, 2004 or August 19, 2004.
 {¶ 15} On cross-examination, the victim stated that nothing unusual occurred between her and Rowley in the past. She said that Rowley and his sister helped her at the hotel. She testified that she "blacked out "at the hotel. She went into both hotel rooms, but does not recall what occurred. She testified that she has no recollection of having sexual activity at the hotel. *Page 6 
 {¶ 16} Cunmulaj testified that at the hotel he could feel the effects of alcohol, but he could control himself. He saw Rowley kiss his girlfriend at the hotel. Cunmulaj also observed the victim and described her as "extremely drunk." He said that she stumbled from room to room and fell. He stated that the victim vomited in the bathroom. The victim then laid on the bed next to the bathroom and said she wanted to go to sleep. He said that the victim had her pants on when she laid down.
 {¶ 17} Cunmulaj stated that he "jumped" in the other bed next to the window, Repinski sat in a chair, Giampapa laid on the floor, and Rowley helped the victim. He testified that while he tried to go to sleep, he heard "what sounded like clanking of like a belt buckle, and just mostly constant movement. And every now and then [Giampapa] would make a comment like, what's going on or something." He testified that the clanking of the belt buckle came from the direction of the bathroom. He also stated that there was "[j]ust wrestling under the covers."
 {¶ 18} Cunmulaj said that Rowley and the victim laid under the covers in the bed closest to the bathroom. He said that he heard a noise from the victim and Rowley said, "[i]t's okay, go back to sleep." He stated that the victim got up, became hysterical, and started saying, "[w]here are my pants? Why are my pants off? Where did they go?" He testified that the lights came on and he saw the victim without her pants on. He testified that the victim grabbed her pants, put them on, and she ran to the second room. He said that Repinski and Giampapa were on the floor, at the foot of the bed. *Page 7 
 {¶ 19} Cunmulaj stated that he also went to the second room. He described the victim as upset and confused. He testified that the victim said, "[m]y crotch hurts." He stated that someone got her a bag of ice and she put it on her vaginal area.
 {¶ 20} On cross-examination, Cunmulaj said that the victim fell down and Rowley helped her up. He also stated that Rowley helped the victim while she vomited.
 {¶ 21} Toward the end of the party, he saw the victim walking around with only her bra and pants on.
 {¶ 22} Giampapa testified that at the hotel, he was mildly intoxicated, but he did not have difficulty communicating. He stated that Rowley and his girlfriend had an argument at the hotel, but he later saw them kiss. Giampapa said that he saw the victim drink alcohol and described her as visibly intoxicated. He recalled that the victim vomited in the bathroom. Then, she laid down under the covers, on the bed next to the bathroom.
 {¶ 23} He testified that Rowley laid in the bed with the victim, on top of the covers. Giampapa stated that he and Repinski lay on the floor at the foot of the bed, farthest from the bathroom. He said that Cunmulaj was also in the room. He testified that he began to fall asleep, but he woke up to knocking at the door and the victim moaning. *Page 8 
 {¶ 24} Giampapa stated that he asked Rowley, "what was going on[?] What's she doing? [Rowley] goes, oh, nothing. She's dreaming. Go back to sleep[.]" He further testified, "[t]hen [the victim] got out of bed and she was saying she didn't have pants on, she was freaking out, where are my pants? I don't have pants on." He described the victim as upset.
 {¶ 25} Giampapa said that the victim went to the second room. Rowley and Cunmulaj also left the hotel room. Giampapa stated that he went into the second hotel room and heard the victim complaining of pain in her vaginal area. He also stated that he is not related to Rowley and does not know if any blood relatives of Rowley's were at the hotel.
 {¶ 26} Repinski testified that on December 18, 2004, he attended the party at Schwartz's house. He then went to the hotel. He consumed alcohol and felt a "buzz." He did not observe Rowley spending much time with his girlfriend and he saw them argue.
 {¶ 27} Repinski testified that he saw the victim drinking alcohol at the hotel. He stated that she took her top off, but she had her bra and pants on. He said that the victim got sick in the bathroom. He observed the victim in the first hotel room sleeping, in the bed closest to the bathroom, with the covers over her. He also saw Rowley in bed with the victim and under the covers.
 {¶ 28} Repinski stated that he laid at the foot of the bed on the floor, but never fell asleep. Giampapa and Cunmulaj were also in the room. He testified that he *Page 9 
heard the victim say "no," but he thought she was having a dream. He said that the victim woke up and he walked out to the parking lot. When he went into the second hotel room, he saw the victim and she appeared to be upset, shocked, and crying. He stated that he got the victim a bag of ice because she said she was hurt. He described Rowley as mad and said that Rowley started to walk somewhere, but he returned to the hotel. Repinski stated that to his knowledge, there were no other male relatives of Rowley's at the hotel.
 {¶ 29} On cross-examination, Repinski testified that he did not know all of the males at the hotel, so he could not say for certain if any of Rowley's relatives were at the party.
 {¶ 30} The victim's mother testified that when the victim got home, she walked into her bedroom and cried. She stated that the victim told her she was at a hotel and woke up next to Rowley, in physical pain, with her pants and underwear around her ankles. The victim's mother said that she attempted to take the victim to two hospitals, but they could not conduct a rape kit. So, they drove to the Rowley residence to discuss the incident. But, they did "not [get] any answer[s] at all. Nothing." Then she took the victim to Southwest General Hospital where a nurse performed a rape kit on her.
 {¶ 31} On cross-examination, the victim's mother stated that the victim told her she had blacked out from drinking alcohol and she couldn't remember what happened. *Page 10 
 {¶ 32} Robert Barsa ("Detective Barsa") of the Strongsville Police Department testified that on December 19, 2004, he responded to Southwest General Hospital and interviewed the victim. He described the victim as embarrassed and close to crying. A nurse gave him the evidence she collected and he took it back to the station to create a record of it. He later sent the evidence to BCI for analysis.
 {¶ 33} On cross-examination, he stated that on December 19, 2004, Rowley became his suspect. He did not examine the crime scene at the hotel because it "wasn't fresh."
 {¶ 34} Brian Sloan ("Detective Sloan") of the Strongsville Police Department testified that he interviewed Rowley twice. At the second interview, Rowley said in a written statement that he did not have any sexual relations with the victim. Detective Sloan collected a DNA sample from Rowley. BCI and Cellmark notified Detective Sloan of the positive test results and he conducted a third interview with Rowley.
 {¶ 35} Detective Sloan read from Rowley's second hand written statement, given at the third interview:
 {¶ 36} "[The victim] had taken, in my estimate, seven to eight shots of Irish whisky 100 proof. After that [the victim] * * * became upset and drank more. [My girlfriend] and I had an opportunity to go into the bathroom and she performed oral sex on me. She did not swallow my sperm and [I] ejaculated into the toilet[.]
 {¶ 37} "I was in the other room when [the victim] called for me. I proceeded over to the room. She was in the room with three other males. She was passed out *Page 11 
with the covers over her. I laid next to her on top of the sheets. With four males in the room, I don't see any way for me to have sexually assault/raped her. She woke up with her pants down and her underwear down. After that, she became confused and began talking to [Cunmulaj]. He named [Giampapa] and [Repinski]. After these statements he then told her that I did it. When I was told this I was in a separate room and then became very upset and yelled at her and ran down the street for a drink.
 {¶ 38} "I came back, and she was crawling around hugging people in only her underwear and bra. The only way possible for my semen to even remotely be near her vaginal area would be by her own act of being on the bathroom floor in her underwear. The people who were in the room when it all happened were [Giampapa], [Cunmulaj], [the victim], and [Repinski]. I had no relations to any persons in that room.
 {¶ 39} "In my opinion, she was desperate and pulled her own pants down and pleasured herself[.]
 {¶ 40} "Before she left for another party [the victim] told my girlfriend, sorry he cheated on you. Also, [the victim] had been in and out of the bathrooms all night long. I, at no point, said anything to [the victim] after she was in bed."
 {¶ 41} On cross-examination, Detective Sloan stated that the victim told him that she experienced a "blackout" at the hotel. He stated that he only took a buccal swab from Rowley because he was the only person in the same bed as the victim. *Page 12 
 {¶ 42} Rowley's girlfriend testified that they are now broken up. She attended the party at Schwartz's house and got mad at Rowley because he played a game with another girl. She stated that later at the hotel, she drank alcohol, but did not become drunk. She said that she did not spend much time with Rowley at the hotel. She testified that she did not perform oral sex or engage in any sexual activity with Rowley at the hotel.
 {¶ 43} She saw the victim drinking alcohol at the hotel and described her as intoxicated. She observed the victim without her top on, but she had her bra and pants on. She saw the victim vomit in the bathroom and Rowley helped her.
 {¶ 44} Rowley's girlfriend stated that she went to the second hotel room and lay down. She testified that later, the victim came into the second room, crying, and said that Rowley raped her. Rowley's girlfriend went into the bathroom with the victim because she wanted to check for bleeding. After the victim wiped herself, Rowley's girlfriend said that she looked at the toilet paper and she did not see blood.
 {¶ 45} She stated that she saw Rowley upset and crying. He left the hotel and started walking toward the Metroparks. He returned to the hotel and slept in his girlfriend's car. She stated that when they woke up, she drove Rowley home.
 {¶ 46} Rowley's girlfriend also stated that Rowley called her in February 2005. She testified, "he just got back from the Detective's office, and he told me that he made up this lie that I gave him oral sex in the bathroom and that when he was ejaculating some of it fell on the floor so that when [the victim] went to the bathroom *Page 13 
and put her pants down, that her pants must have gotten in the part that fell on the floor. [H]e just wanted me to go along with the story[.] I was really upset that he would lie in the first place, and he would lie in front of his parents and say that about me." She also stated that he said, "we will tie up loose ends and this whole thing will be over with." She testified that she never went along with his story.
 {¶ 47} On cross-examination, Rowley's girlfriend stated that she never kissed Rowley at the hotel. She testified that the victim vomited sometime between 12:30 a.m. and 1:00 a.m. She also said that the victim was gone by 4:00 a.m.
 {¶ 48} Julie Aljabi ("Nurse Aljabi"), a nurse from Southwest General Hospital, testified that on December 19, 2004, she conducted a rape kit test on the victim and collected her clothes. She described the victim as tearful and cooperative. Once she collected all the evidence, she called the Strongsville Police Department and gave the evidence to Detective Barsa.
 {¶ 49} Nurse Aljabi stated that there are not always physical signs of trauma when sexual intercourse or penetration occurs. She testified that the victim did not have any signs of physical trauma. She said that the victim complained of vaginal soreness. Nurse Aljabi also stated that the victim told her that when she went to the bathroom and wiped, she saw a small amount of blood on the toilet paper.
 {¶ 50} On cross-examination, Nurse Aljabi testified that the victim told her that at 4:00 a.m., she woke up and vomited. The victim realized that she was wearing *Page 14 
her bra, but her shirt was off, and her pants and underwear were around her ankles. Nurse Aljabi concluded that the incident occurred between 1:00 a.m. and 4:00 a.m.
 {¶ 51} Nurse Aljabi stated that after her conversation with the victim, she wrote in the hospital report "unknown" next to assailant, sex of assailant, and number of assailants. She explained that the victim did not say "unknown." She said that the victim suspected that she had been sexually and vaginally assaulted by someone.
 {¶ 52} Chad Britton ("Britton"), a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation ("BCI") testified that he examined evidence collected from Rowley and the victim. Britton determined that two areas, located on the inside crotch panel of the vicitm's underwear, contained seminal fluid. He also concluded that the areas tested positive for amylase and presumptively positive for saliva.
 {¶ 53} On cross-examination, Britton stated that he received negative test results for semen in the vaginal, rectal, and oral areas of the victim. He testified that he did not know if the victim wore her underwear inside-out. He also explained that fabric will absorb a wet sample when it comes in contact with it.
 {¶ 54} Melissa Zielaskiewicz, a forensic scientist with BCI, testified that she conducted DNA analysis on a sample of the victim's underwear and a sample from Rowley. She concluded that the female DNA on the underwear overpowered the male DNA. She recommended that another laboratory, Orchid Cellmark *Page 15 
("Cellmark"), perform Y-STR testing, which only tests for the Y chromosome specific to males.
 {¶ 55} On cross-examination, she stated that she could not identify what side of the underwear was tested for DNA.
 {¶ 56} Jason Befus testified that he was employed at Cellmark and performed a DNA test on a sample of the victim's underwear and on cheek swabs identified to Rowley. He conducted a Y-STR test because it is beneficial when female DNA overpowers the male DNA. He determined that Rowley could not be excluded as a source of DNA from the sample. He also concluded, either Rowley or a member of his paternal lineage had to be the source of the DNA. Befus said that he found one other unknown source in the test kit's data base that had the same Y-STR DNA profile as Rowley, so that source is within the same parental lineage as Rowley and it could not be excluded. The data base consisted of a total of 3,313 samples, including 1,311 Caucasian samples.
 {¶ 57} On cross-examination, Befus testified that the results showed a "peak" which indicated a possibility that another type of male DNA could be present, but he could not determine those results. He stated that the test has an inherent flaw, because it can show peaks without the presence of DNA.
 {¶ 58} The state rested and dismissed count one, rape, in violation of R.C. 2907.02(A)(2), and count three, gross sexual imposition, in violation of R.C. *Page 16 2907.05(A)(1). Rowley moved for Crim.R. 29 acquittal. The court denied the motion.
 {¶ 59} The defense first called Rowley's mother, ("Mrs. Rowley"), to testify. She stated that after Rowley's second interview with Detective Sloan, he told her some information that he did not tell Detective Sloan or his father. She took Rowley to his third interview in April 2005. That same month, Mrs. Rowley stated that Rowley's girlfriend told her that she had informed her mother what she and Rowley had done in the hotel bathroom.
 {¶ 60} On cross-examination, Mrs. Rowley denied that she and her son came up with a reason why his DNA was on the victim's underwear.
 {¶ 61} On December 18, 2004, Rowley was eighteen years old, date of birth November 26, 1986. Rowley testified that he went to the party at Schwartz's house. He and his girlfriend talked, but did not get into an argument. He stated that later that evening he rented two hotel rooms at the Days Inn, in Strongsville. He said that he drank, but he was aware of his surroundings and everything that he did.
 {¶ 62} Rowley described the victim as drunk and said that she took her clothes off. He stated that he helped her put her clothes back on. He also assisted her into the first hotel bathroom, where she vomited. After the victim vomited, she returned to the party.
 {¶ 63} He said that he laid down on a bed with his girlfriend and they kissed. Rowley testified that he and his girlfriend moved to the bathroom where she *Page 17 
performed oral sex on him. Oral sex was not unusual for them. He said that he ejaculated toward the toilet. They cleaned up and left the bathroom.
 {¶ 64} Rowley testified that the victim called for him, so he went to the second room. He said the victim vomited again and he took care of her. Rowley stated that the victim wanted him or his sister to lay down in bed with her, so he laid on top of the covers. He testified that the bed was in the second room and located near the bathroom. He stated that he, Giampapa, Repinski, and Cunmulaj all tried to get some rest.
 {¶ 65} Rowley further stated that he did not do anything to the victim. He testified that she woke up under the covers with her pants and underwear down and she had to go to the bathroom. Rowley said that he got up, Repinski went outside, and then the victim went into the other room.
 {¶ 66} He stated that she became afraid of what happened to her. He testified that accusations were made toward Giampapa and Repinski. Then the victim accused Rowley and he replied to her, "absolutely not. I had nothing to do with it." He said he had to "cool off because, "[the victim] is like a sister to him. She's always been my sister's best friend. She's very close to my family. I never would do anything to her, and I was very afraid she would accuse me of it."
 {¶ 67} Rowley said that he went into the other room and saw the victim on the floor, in her underwear, holding her crotch, screaming, and hugging people's legs. He stated that he and Repinski went to get her ice. He said that he then walked *Page 18 
down the street. He returned to the hotel and fell asleep. When he woke up, his girlfriend drove him home. He stated that later, the victim and her parents came over to his house to ask him questions.
 {¶ 68} Rowley testified that he called the Strongsville Police Department and in January 2005, he went with his father for two interviews with Detective Sloan. He said that he did not tell Detective Sloan that he had oral sex with his girlfriend because his father was present. After the second interview, he told his mother that he had oral sex with his girlfriend in the hotel bathroom. On April 25, 2005, his mother brought him to his third interview. He denied that his mother coached his response or statement.
 {¶ 69} On cross-examination, Rowley testified that he saw the victim in her underwear, crawling around both bathroom floors and hugging the toilet. He stated that the victim first vomited in the second bathroom. Then his girlfriend performed oral sex on him in the second bathroom. He said that he went over to the first room to help the victim because she vomited again. He testified that he helped the victim into bed in the first room and put the covers over her. He stated that she had her underwear and pants on.
 {¶ 70} Rowley said that when he got into the same bed as the victim, she moved around, but the movements were not consistent with masturbation. When the victim woke up, she complained that her underwear and pants were around her ankles and then she went to the bathroom. He testified that he did not know how her *Page 19 
underwear and pants got around her ankles. But, he told Detective Sloan that he believed she pleasured herself. He stated that when he got into bed with the victim, "[s]he was moving about so I can't say she was asleep. She had a dream."
 {¶ 71} Rowley said that Giampapa, Repinski, and Cunmulaj were also in the first room when he got in bed with the victim. Rowley testified that he never saw any of them in bed with the victim. The prosecutor asked him if any of them were related to him and Rowley replied, "[t]o the best of [his] knowledge, no." He denied calling his girlfriend and asking her to lie for him.
 {¶ 72} Rowley rested his case and renewed his Crim.R. 29 motion. The trial court denied it. After deliberation, the jury found Rowley guilty of count four, gross sexual imposition, in violation of R.C.2907.05(A)(5). However on count two, rape, in violation of 2907.02(A)(1)(c), the jury found him not guilty.
 {¶ 73} On August 15, 2006, the trial court sentenced Rowley to nine months in prison. The trial court also informed him that he would have to serve five years of post-release control following his release from prison.
 {¶ 74} It is from this judgment that Rowley appeals and asserts the following assignments of error:
 {¶ 75} "[1.] The evidence was insufficient to support a finding of guilt.
 {¶ 76} "[2.] The verdict was against the manifest weight of the evidence."
 {¶ 77} In his first assignment of error, Rowley argues that the evidence was not sufficient to convict him of gross sexual imposition. Specifically, he asserts that the *Page 20 
evidence was not definitive as to what happened to the victim, much less to prove that Rowley committed gross sexual imposition.
 {¶ 78} Sufficiency of the evidence is the legal standard which is applied to determine whether the evidence is legally sufficient to support a jury verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Legal sufficiency is a test of adequacy and is a question of law. Id., citing State v. Robinson (1955), 162 Ohio St. 486. When determining sufficiency of the evidence, we must consider whether, after viewing the probative evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense proven beyond a reasonable doubt. State v.Shaffer, 11th Dist. No. 2002-P-0133, 2004-Ohio-336, at _17.
 {¶ 79} In the case at bar, Rowley was convicted of gross sexual imposition under R.C. 2907.05(A)(5), which provides, "[n]o person shall have sexual contact with another * * * when * * * the ability of the other person to resist or consent * * * is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person * * * is substantially impaired because of a mental or physical condition
 {¶ 80} Pursuant to R.C. 2907.01(B), "`[s]exual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, *Page 21 
buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 81} A review of the record indicates that there was sufficient evidence to support a conviction. The testimony established that at the hotel, the victim drank alcohol and became intoxicated. Rowley knew of the victim's condition because he saw her drink seven or eight shots of whiskey and then drink more. He also saw her fall and take her top off. He helped her when she vomited and he also helped her into the bed closest to the bathroom.
 {¶ 82} Cunmulaj, Giampapa, and Repinski, were in the same room with Rowley and the victim. Rowley testified that to the best of his knowledge, Cunmulaj, Giampapa, and Repinski are not related to him. They all testified that Rowley laid in the bed with the victim. According to Cunmulaj, he heard the clanking of a belt buckle and constant movement from the direction of the bathroom. Giampapa said he heard the victim moaning and Rowley said that she had a dream. Repinski testified that he heard the victim say, "no," but he thought she had a dream.
 {¶ 83} The victim testified that when she woke up, she saw Rowley in the same bed as her. She also said that her pants and underwear were around her ankles. Rowley, Cunmulaj, and Giampapa, also saw her without pants on and they said she became upset. The victim went to the bathroom and urinated and testified that she saw blood on the toilet paper. She went to the second hotel room and complained about vaginal pain. *Page 22 
 {¶ 84} The victim went to Southwest General Hospital where Nurse Aljabi completed a rape kit on her. Nurse Aljabi stated that the victim complained of vaginal soreness. Nurse Aljabi did not find any physical signs of trauma, but she said that it is not uncommon when sexual intercourse or penetration occurs. Detective Barsa collected the evidence and sent it to BCI.
 {¶ 85} Britton detected seminal fluid on the victim's underwear. Zielaskiewicz concluded that the female DNA overpowered the male DNA, so she sent it to Cellmark for Y-STR testing. Befus tested the victim's underwear and compared it to a sample from Rowley. He determined that Rowley could not be excluded as the source of DNA and either he or a member of his paternal lineage was the source of the DNA.
 {¶ 86} Based upon the testimony and physical evidence presented, there is sufficient evidence by which a jury could find that all of the elements of the instant offense were proven beyond a reasonable doubt. As such, Rowley's first assignment of error is overruled.
 {¶ 87} In his second assignment of error, Rowley argues that his conviction was against the manifest weight of the evidence. He argues that there is a lack of evidence that he even touched the victim, except to help her. He also contends that the victim was intoxicated and her testimony is not reliable.
 {¶ 88} Although a judgment of a trial court is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the *Page 23 
weight of the evidence. Thompkins, supra, at 387, citingRobinson, supra, at 487. Sitting as the "thirteenth juror," in a manifest weight argument, an appellate court reviews the entire record, weighs the evidence and all the reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.
 {¶ 89} In addition, when assessing witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986), 22 Ohio St.3d 120, 123. The factfinder is free to believe all, part, or none of the testimony of each witness appearing before it. Warren v.Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 3.
 {¶ 90} With this standard in mind, we conclude that Rowley's conviction was not against the manifest weight of the evidence. As stated in the previous assignment, Rowley knew that the victim was intoxicated. Rowley, Cunmulaj, Giampapa, and Repinski each testified that Rowley laid in the bed closest to the bathroom, with the victim. According to Cunmulaj, he heard the clanking of a belt buckle and constant movement from the direction of the bathroom. Giampapa said *Page 24 
he heard the victim moaning and Rowley said that she had a dream. Repinski testified that he heard the victim say, "no," but he thought she had a dream.
 {¶ 91} When the victim woke up, she saw Rowley in the same bed as her. She said that her pants and underwear were around her ankles. Rowley, Cunmulaj and Giampapa also confirm that they saw the victim without pants on and that she became upset. The victim testified that she urinated in the first bathroom and saw blood on the toilet paper. Cunmulaj, Giampapa, and Rowley's girlfriend each testified that the victim complained about vaginal pain. Repinski knew the victim was hurt, so he got her ice.
 {¶ 92} The victim's mother said that her daughter told her that she woke up next to Rowley, in physical pain, with her pants and underwear around her ankles. Her mother took her to Southwest General Hospital. Nurse Aljabi said the victim complained of vaginal pain. Nurse Aljabi completed a rape kit on her, but did not find physical signs of trauma, however she said this is not uncommon with sexual intercourse or penetration.
 {¶ 93} After BCI performed tests, Befus tested the victim's underwear and compared it to a sample from Rowley. He determined that Rowley could not be excluded as the source of DNA and either he or a member of his paternal lineage was the source of the DNA. Rowley testified that to the best of his knowledge, Cunmulaj, Giampapa, and Repinski are not related to him. *Page 25 
 {¶ 94} Although Rowley stated that his girlfriend performed oral sex on him at the hotel and that his semen could have transferred onto the victim's underwear when she crawled on the bathroom floor, the jury chose not to believe him. Also, the jury choose not to believe Mrs. Rowley's testimony that Rowley's girlfriend told her own mother about what she and Rowley had done in the bathroom. The jury was free to believe the overwhelming evidence against Rowley, including his own girlfriend's testimony that she did not perform oral sex on Rowley and that Rowley told her that he made up a lie and that she refused to go along with it.
 {¶ 95} After reviewing all of the evidence, we cannot conclude that the trier of fact lost its way. Thus, the trial court did not create such a "manifest miscarriage of justice" that the conviction should be reversed and a new trial ordered. As such, Rowley's second assignment of error is overruled.
 {¶ 96} Accordingly, the judgment of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 26 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J., and ANN DYKE, J., CONCUR.
[1] Defense counsel stipulated to her in-court identification of Rowley. *Page 1